**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 20-0090** (Berkeley County CC-02-2019-F-123)

**Victor D.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Victor D., by counsel B. Craig Manford, appeals the January 3, 2020, order of the Circuit Court of Berkeley County that sentenced him following his no contest plea to one count of attempted second-degree sexual assault; one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust; one count of child abuse causing injury; one count of first-degree sexual abuse; and one count of a violation of a protective order.[1] The State of West Virginia, by counsel Scott E. Johnson, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion to vacate the plea and proceed to trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, a grand jury indicted petitioner on one count of attempted second-degree sexual assault; ten counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust; ten counts of first-degree sexual abuse; two counts of child abuse causing bodily injury; and one count of violating a protective order. The alleged victim was petitioner's daughter, A.Y.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in the case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles, L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The parties entered into a plea agreement in mid-August of 2019. Petitioner agreed to plead no contest[2] to one count of attempted second-degree sexual assault; one count of sexual abuse by a parent, guardian, or person in a position of trust; one count of child abuse causing injury; and one count of first-degree sexual abuse. Additionally, petitioner agreed to plead guilty to one count of a violation of a protective order.[3] The State agreed to dismiss all remaining counts of the indictment and further agreed to recommend concurrent sentencing for petitioner.

In late August of 2019, the circuit court held a plea hearing. Petitioner spoke very little English and was provided an interpreter who translated for him both in meetings with his counsel and during court proceedings. The court stated that it was willing to accept the plea agreement but highlighted that the plea agreement prohibited contact of any kind with the victim (his daughter) or her mother. Throughout the hearing, the court inquired of petitioner, through his interpreter, whether he understood the terms of his plea agreement and the penalties for the counts of the indictment for which he was pleading no contest, and petitioner answered affirmatively. The court also inquired of petitioner's counsel whether he had discussed the terms of the plea agreement in detail with his client, and counsel explained that he and the interpreter spent nearly three hours with petitioner explaining and discussing the discovery in the case, as well as the plea agreement. In both the interpreter's and counsel's opinions, petitioner appeared to understand the terms of the plea agreement, and counsel stated that he believed that the plea agreement was in petitioner's best interest. The court then asked petitioner if the statements by his interpreter and counsel were true, and he answered affirmatively. The court then established that petitioner's counsel had fully explained the terms of the plea agreement to petitioner. The court next confirmed that petitioner had never been treated for mental or emotional illness nor for substance abuse and further confirmed that petitioner was not presently under the influence of any medications, alcohol, or drugs. Accordingly, the court found that petitioner was competent to enter his no contest pleas.

---

[2]Petitioner entered pleas of "no contest" or otherwise referred to as pleas of "Nolo Contendere"—meaning literally "I do not wish to contend" in Latin. *See State ex rel. Clark v. Adams*, 144 W. Va. 771, 778, 111 S.E.2d 336, 340 (1959) ("The plea of nolo contendere means literally 'I do not wish to contend' and it has its origin in the early English common law. It constitutes an implied confession of guilt."). A nolo contendere plea has the same substantive effect as a plea of guilty. *See Id*. at 782, 111 S.E.2d at 342 (citing *Schad v. McNinch*, 103 W. Va. 44, 136 S.E. 865 (1927)). Furthermore, according to Rule 11(b) of the West Virginia Rules of Criminal Procedure "[a] defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice." Because the record below refers to "no contest" while cited authorities refer to "nolo contendere," the two terms will be used interchangeably throughout this memorandum decision.

[3]Inexplicably, petitioner later pled no contest to the misdemeanor charge, and this change was not addressed at the plea hearing.

The circuit court thoroughly explained petitioner's rights and confirmed that he understood the same. Specifically, regarding petitioner's choice to plead "no contest," the following exchange took place:

> The Court: Do you understand that if you continue in your plea of no contest and this court accepts the plea that there will be no trial but you will be just as convicted of these crimes[,] all five of them[,] as if a jury had returned a lawful verdict of guilty against you?
>
> Petitioner: (through interpreter) I understand.

The court further described the nature of a no contest plea.

> The Court: You're also advised that when you enter a plea of guilty to a charge you're saying the charge is true. When you enter a plea of not guilty to a charge you're saying that either the entire charge is not true or some essential elements in the charge are not true and you're calling upon the [S]tate to bear it's[sic] burden of proof beyond a reasonable doubt.
>
> The third option is to plead no contest to a count. In that situation you are not admitting to anything. You are saying to this Court that you believe the [S]tate has enough admissible evidence that you would likely be convicted of one or more of the counts in the indictment and you just want to buy your peace and get it behind you and take the sentencing and in this case it would be the sentencing as has been agreed upon by your attorney and the [S]tate. Do you understand that sir?
>
> Petitioner: (through interpreter) I do.

The circuit court then explained the elements of each crime to which petitioner intended to plead no contest and further explained the consequences of petitioner's plea of no contest to the five counts.

> The Court: So you understand, sir, that based upon everything that the Court has just reviewed with you that your plea of no contest to each of these counts would essentially say I'm not admitting to and I am not denying that any of these acts occurred but what I'm saying is I believe that the [S]tate has enough admissible evidence, meaning, evidence that the jury could hear that would allow them to convict me understanding that the [S]tate's burden is beyond a reasonable doubt and I just want to buy my peace and move forward. Do you understand that's what you would be doing effectively by entering a no contest plea to each of these counts in the indictment?
>
> Petitioner: (through interpreter) Yes.

The court then ensured that petitioner was aware of the penalties for each count to which he was pleading no contest, and the State provided a factual basis for those pleas and described the evidence it would have presented at trial. Petitioner executed a written no contest plea form in open court with the assistance of his interpreter. The court then asked petitioner if he wished to withdraw his no contest pleas, and petitioner responded "no." The court accepted petitioner's no contest pleas to the following: one count of attempted second-degree sexual assault; one count of sexual abuse by a parent, guardian, or person in a position of trust; one count of child abuse causing injury; one count of first-degree sexual abuse; and one count of a violation of a protective order. In exchange for the pleas, the State dismissed the remaining counts of the indictment and agreed to concurrent terms of incarceration at petitioner's sentencing. Finally, the court provided petitioner with written notice and an acknowledgment of sexual offender registration requirements. The notice was also provided to petitioner in Spanish. The court set the matter for a sentencing hearing. Thereafter, the court entered an order reflecting the plea hearing and found that petitioner's pleas of no contest were "knowing, voluntarily [made], and with the advice of counsel." The court also found that there was a sufficient factual basis for the pleas.

Thereafter, on November 4, 2019, petitioner filed a "Motion to Vacate Plea and Proceed to Trial." In the motion, petitioner's counsel stated that he and the interpreter met with petitioner on November 1, 2019, to review the presentence investigation report as well as terms of petitioner's extended supervised release and sexual offender registry requirements. "At that time [petitioner] stated that he never entered a guilty plea to any of the above recited charges and asserted his innocence." In response, petitioner's counsel reminded petitioner that he pled no contest instead of guilty to the five counts, but nonetheless was convicted after the court took "great pains to determine that [he] understood what he was doing." Petitioner claimed that he did not knowingly enter the no contest pleas despite telling his counsel and the court that he understood. Petitioner's counsel stated that he did not know whether petitioner "had a change of heart or if he was mentally ill or incompetent" due to petitioner's agitated behavior during their two-and-a-half-hour meeting. Petitioner's counsel suggested that the court "may wish a competency evaluation" of petitioner. The State filed a response objecting to the motion, arguing that petitioner was "competent, aware of his rights, and made the decisions to plead no contest fully knowing, [voluntarily], and with the advice of counsel."

The following day, the court held petitioner's sentencing hearing and addressed the motion. The court questioned the interpreter who stated that petitioner had answered that he understood her throughout the proceedings. The court asked petitioner's counsel whether he had any concerns regarding petitioner's competency "until this point in the litigation," and counsel answered that he had none. Initially, petitioner requested to testify and took the stand, but then elected not to testify after the court advised him of his right to remain silent and the potential adverse consequences of his testimony. In denying the motion, the court found that petitioner knowingly, intelligently, freely, and voluntarily entered his no contest pleas; there was no evidence to support petitioner's claims of an involuntary plea; and there was no fair and just reason to allow petitioner to withdraw said pleas. The circuit court then sentenced petitioner pursuant to the plea agreement to an aggregate term of ten to twenty years of incarceration with all five terms of incarceration running concurrently. The circuit court denied petitioner's motion to vacate his pleas and proceed to trial within its sentencing order entered on January 3, 2020. Petitioner now appeals that order.

4

With the understanding that petitioner entered pleas of nolo contendere rather than pleas of guilty, the following standard of review nonetheless applies as Rule 32(e) of the West Virginia Rules of Criminal Procedure controls both guilty and nolo contendere pleas:

> Notwithstanding that a defendant is to be given a more liberal consideration in seeking leave to withdraw a plea before sentencing, it remains clear that a defendant has no absolute right to withdraw a guilty plea before sentencing. Moreover, a trial court's decision on a motion under Rule 32[(e)] of the West Virginia Rules of Criminal Procedure will be disturbed only if the court has abused its discretion.

Syl. Pt. 2, *Duncil v. Kaufman*, 183 W. Va. 175, 394 S.E.2d 870 (1990). "Rule 32[(e)] of the West Virginia Rules of Criminal Procedure as it relates to the right to withdraw a guilty or nolo contendere plea prior to sentence permits the withdrawal of a plea for 'any fair and just reason.'" *Id.* at 176, 394 S.E.2d at 871, Syl. Pt 1 (citation omitted).

Petitioner argues that the circuit court erred by failing to allow him to withdraw his "prior guilty pleas." He contends that the circuit court should have evaluated his mental status or competency by ordering him to undergo a psychological evaluation. According to petitioner, he did not plead guilty below, and he maintains his innocence.

At the outset, we clarify that the record shows that petitioner entered pleas of nolo contendere and not pleas of guilty. Petitioner is mistaken in this regard, and his claim of actual innocence has no bearing on his nolo contendere pleas, as he neither claimed innocence nor admitted guilt when he entered the nolo contendere pleas. Indeed, even if petitioner had pled guilty, his assertion of actual innocence does not entitle him to withdraw his plea. *See Id.* at 178, 394 S.E.2d at 873 ("A mere declaration of innocence does not entitle a defendant to withdraw his guilty plea.").

Furthermore, we find no indication in the record that petitioner failed to understand that his entry of nolo contendere pleas would result in his convictions and resultant terms of incarceration. In his brief, petitioner concedes that that the circuit court complied with the requirements of Syllabus Point Three of *Call v. McKenzie*.[4] It is also abundantly clear from the

---

[4]*Call v. McKenzie* provides:

> When a criminal defendant proposes to enter a plea of guilty, the trial judge should interrogate such defendant on the record with regard to his intelligent understanding of the following rights, some of which he will waive by pleading guilty; 1) the right to retain counsel of his choice, and if indigent, the right to court appointed counsel; 2) the right to consult with counsel and have counsel prepare the defense; 3) the right to a public trial by an impartial jury of twelve persons; 4) the right to have the State prove its case beyond a reasonable

(continued . . . )

record that the circuit court also adhered to the requirements of Rule 11(d) of the West Virginia Rules of Criminal Procedure[5] during its thorough plea colloquy with petitioner. Additionally, petitioner does not claim that his translator was deficient or that she failed to properly relay information to him. When the court questioned the interpreter, she testified that she believed petitioner understood the plea agreement and the consequences thereof. The circuit court took great pains to repeatedly explain the consequences of petitioner's nolo contendere pleas, the resultant terms of incarceration, and the requirements for extended supervised release and sex offender registration. Many, if not all, documents were provided to petitioner in Spanish and read to him in open court with his translator actively following along and translating to him. Transcripts of the plea hearing reveal that the circuit court patiently waited and made sure that petitioner and his interpreter had all the time they needed, and that petitioner could stop at any moment. Notably, at petitioner's sentencing hearing, he initially took the stand to testify but chose not to upon the court's warning of self-incrimination, thereby belying petitioner's argument that he did not understand the proceedings.

Petitioner puts forth no evidence that his plea was involuntary other than a bare bones assertion that he should have received a competency evaluation after he acted "agitated and upset" at his attorney meeting on the eve of his sentencing hearing. However, "[w]hether a formal inquiry as to the mental capacity or competency of a defendant should be ordered is a question to be resolved within the sound discretion of the trial court." Syl. Pt. 3, *State v. Arnold*, 159 W. Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds by State v. Demastus*, 165 W. Va. 572, 270 S.E.2d 649 (1980), and *State v. Paynter*, 206 W. Va. 521, 526 S.E.2d 43 (1999).

Here, there was no evidence to support that petitioner was incompetent. Petitioner

---

doubt and the right of the defendant to stand mute during the proceedings; 5) the right to confront and cross-examine his accusers; 6) the right to present witnesses in his own defense and to testify himself in his own defense; 7) the right to appeal the conviction for any errors of law; 8) the right to move to suppress illegally obtained evidence and illegally obtained confessions; and, 9) the right to challenge in the trial court and on appeal all pre-trial proceedings.

Syl. Pt. 3, 159 W. Va. 191, 220 S.E.2d 665 (1975).

[5]To ensure that a plea is voluntary,

the court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

W. Va. R. Crim. Proc. 11(d).

rationally answered all questions; denied having any history of mental illness or addiction; and reviewed, read, and signed the nolo contendere plea form in open court. When asked whether he had concerns regarding petitioner's competency prior to his meeting to prepare for the sentencing hearing, petitioner's counsel stated that he had none. Upon review, we find that petitioner did not demonstrate "any fair or just reason" to withdraw his nolo contendere pleas, and, accordingly, the circuit court did not abuse its discretion in denying petitioner's motion to withdraw his pleas.

For the foregoing reasons, the circuit court's January 3, 2020, sentencing order denying petitioner's motion to vacate plea and proceed to trial is hereby affirmed.

Affirmed.

**ISSUED:** August 27, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton